# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

ZACHARY B. BAILEY,     )
                    )
    Plaintiff,      )
                    )
v.                  )     Case No. CV413-202
                    )
CAROLYN W. COLVIN,     )
*Acting Commissioner of Social*  )
*Security*,           )
                    )
    Defendant.     )

## <u>REPORT AND RECOMMENDATION</u>

Zachary B. Bailey, a 51-year-old man suffering from bilateral hip replacement secondary to avascular necrosis, applied for a period of disability, disability insurance benefits, and supplemental security income on June 29, 2009, alleging an onset date of January 9, 2009. (Tr. 37, 39, 85.) His application was denied both initially and on reconsideration. (Tr. 37.) An Administrative Law Judge ("ALJ") conducted a hearing and denied benefits. (Tr. 37-44.) The Appeals Council denied his request for review, making the ALJ's decision the

final decision of the Commissioner. (Tr. 1-4.) He then filed a complaint for judicial review in this Court, contending that the ALJ erred in reaching his determination. (Doc. 1.) For the following reasons, the Commissioner's decision should be affirmed in part and reversed in part.

## I. MEDICAL HISTORY

Bailey has suffered through multiple bilateral hip replacements and revisions, along with frequent post-surgical infections and long periods of rehabilitation. Prior to his alleged onset date, he underwent two procedures on his right hip. In August 2007, he was diagnosed with femoral-acetabular impingement and a small area of avascular necrosis on the head of his right femur. (Tr. 358-59.) He continued to have avascular symptoms and some joint collapse, necessitating a partial right hip replacement and resurfacing in February 2008. (Tr. 345-46.) He returned to work until January 9, 2009, but he has not engaged in "substantial gainful activity" since that time. (Tr. 39.)

In May 2009, Dr. James Holtzclaw found that Bailey had "stage III avascular necrosis" of his *left* hip. (Tr. 414.) Bailey underwent a total left hip replacement on June 9, 2009 and then spent months in physical therapy. (Tr. 318-23 (surgery); Tr. 898-900 (20 physical therapy visits

2

between late June and early September 2009).) By August 2009, while still in physical therapy sessions related to the left hip replacement, Dr. Holtzclaw noted that while Bailey's left hip was in good condition, his *right* hip experienced femoral loosening at the prior surgical site. (Tr. 410.) Bailey underwent a total replacement of his right hip on September 15, 2009, followed by 18 more physical therapy sessions. (Tr. 407 (noting surgery); tr. 895-97 (physical therapy).) Thereafter, Holtzclaw discovered that a seroma, a pocket of fluid, had formed in the right hip. On December 7, 2009, he re-opened the right hip, drained the seroma, and repaired Bailey's iliotibial band, a bit of connective tissue that connects several muscles in the thigh to the tibia. This was followed by more physical therapy. (Tr. 428-29 (fluid drain and repair of iliotibial band fascia); Tr. 894 (physical therapy visits).)

A month later, on January 7, 2010, Holtzclaw performed a total right hip revision, noting significant metal wear on the joint, which had only been installed a few months earlier. (Tr. 424-26 (right hip revision, replacing hip joint).) The wound became infected. (Tr. 423, 427.) Holtzclaw was forced to intervene surgically on February 2, 2010, performing an irrigation and debridement. (Tr. 416, 423, 427.) A few

days later, Bailey complained of chest pain and was diagnosed with deep vein thrombosis caused by the placement of a catheter in his arm so that he could receive IV antibiotics on an outpatient basis. (Tr. 416 (placement of PICC line); Tr. 390 (noting outpatient IV treatment); *see* Tr. 497 (later note confirming February 2010 diagnoses of deep vein thrombosis, though the Court could not locate the actual treatment notes in the record).) After treatment, he was released and restarted physical therapy. (Tr. 879-915 (sessions from June 2009 through May 2010).)

In April 2010, Bailey again complained of increasing pain in his right hip. (Tr. 937.) Doctor Holtzclaw found a small, hard mass. (*Id.*) He scheduled Bailey for CT scan, which showed excellent position of the prosthetic components, but Bailey still complained of pain. (Tr. 935-36.) Holtzclaw found cellulitis in the region and prescribed an antibiotic. (Tr. 935.) By June 21, 2010, Dr. Holtzclaw noted that the antibiotic had not cleared the infection, so he scheduled Bailey for another irrigation and debridement procedure, which he performed the next day. (Tr. 931-32 (treatment notes).) He was set to have his surgical staples removed a few weeks later, and during this period he remained on IV antibiotics at home, as prescribed by Dr. Richard Roth, an infectious disease specialist.

(Tr. 931-32.) At that follow-up appointment on July 6, 2010, the staples were removed, but he complained of left arm pain. Suspecting a blood clot would develop, Holtzclaw prescribed Coumadin and Lovenox as "prophylactic measures." (Tr. 930.) He was taken off IV antibiotics at some point between July 20 and August 9, 2010. (Tr. 927-28.)

All seemed to be going well, but by August 23, 2010, it appeared that the infection had returned. (Tr. 927.) The following week, Bailey reported that he was in serious pain and had begun taking pain medicine (he had been prescribed narcotic pain relievers on and off throughout this period). (Tr. 924.) Holtzclaw suspected another recurrent seroma in the right hip. (*Id.*) On September 2, 2010, Holtzclaw performed another hours-long total right hip replacement/revision, as well as an irrigation and debridement followed by the placement of antibiotic Vancomycin beads and Hemovac drains. (Tr. 523-28.) He was again catheterized for home IV antibiotic therapy. (Tr. 526.) Bailey was discharged on September 8, 2010. (Tr. 528-30.) At a follow-up appointment, Dr. Holtzclaw noted that Bailey continued on antibiotics, and that the recurrent infection was a strain of MRSA. (Tr. 921.) He continued on IV antibiotics for some time under Dr. Roth's supervision. (*Id.*) By

November, he had been switched to oral antibiotics and reported that he was doing quite well. (Tr. 960.) On December 29, 2010, Holtzclaw declared Bailey to be in stable condition, gave no new recommendations, and scheduled him for a follow-up in eight weeks. (Tr. 959.)

Two months later, Bailey returned, this time reporting pain in his *left* hip, accompanied by "popping" noises. Dr. Holtzclaw noted that the left hip implant had been recalled. (Tr. 957.) On February 25, 2011, an MRI revealed a seroma in the left hip. (Tr. 955.) Bailey also had heightened chromium and cobalt levels in his blood caused by the deterioration of the faulty implant. (Tr. 954.) Dr. Holtzclaw thus recommended that Bailey have the left hip implant replaced. (Tr. 952.) They set the surgery down for March 24, 2011. (Tr. 946.) After the second left hip replacement, Bailey resumed physical therapy. (Tr. 945.) But on April 30, 2011, while recovering from the left hip replacement, he dislocated his left hip. (Tr. 966.) The next morning, Dr. Ronald Levit performed a closed reduction of the dislocation. (Tr. 968.) Bailey continued therapy for five months thereafter. (Tr. 961, 971-72.)

## II.  STANDARD OF REVIEW

Affirmance of the Commissioner's decision is mandatory if her conclusions are supported by substantial evidence and based upon an application of correct legal standards.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is something more than a mere scintilla, but less than a preponderance." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation marks and citations omitted).  It "is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (quotation marks and citations omitted).  If substantial evidence supports the decision, the Court will affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Id.* at 1158-1159.  This Court cannot substitute its judgment for that of the Commissioner.  *Barnes v. Sullivan*, 932 F.2d 1356, 1357-1358 (11th Cir. 1991).

The burden of proving disability lies with the claimant.  20 C.F.R. § 404.1512; *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).  To determine whether he has met the burden, the Court looks to the five-

step evaluation process set forth in the Social Security Regulations. 20 C.F.R. § 416.920; *Dixon v. Astrue*, 312 F. App'x 227, 227-28 (11th Cir. 2009); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). At step one, the claimant must prove that he has not engaged in substantial gainful activity. *Jones*, 190 F.3d at 1228. At step two, he must demonstrate a severe impairment or combination of impairments. *Id*. Then, at step three, if the claimant's impairment meets or equals a listed impairment, he is automatically found disabled. *Id*. If not, he must advance to step four, which requires him to prove an inability to perform past relevant work. *Id*. At that step the ALJ assesses "the claimant's residual functional capacity ('RFC')" and "ability to return to [his] past relevant work." *Phillips v. Barnhart*, 357 F.3d 1232, 1238 (11th Cir. 2004). "[T]he regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments." *Id*. (citing 20 C.F.R. § 404.1545(a)); *Moore v. Comm'r of Soc. Sec.*, 478 F. App'x 623, 624 (11th Cir. 2012). If he cannot perform past relevant work, stage five shifts the burden to the Commissioner to show that "there is other work available in significant numbers in the national economy that the claimant is able to perform." *Moore*, 478 F. App'x at 624.

## III. ANALYSIS

In his November 30, 2011 decision, the ALJ evaluated the medical evidence of record along with medical source statements from Dr. Holtzclaw, physical therapist Jason Hux, a consultative examiner, and two state functional assessments by non-examining physicians. (Tr. 41-43.) He found that Bailey could not return to his previous employment as a grocery store meat department manager (Tr. 52), but he determined that Bailey retains the residual functional capacity

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can lift 10-15 pounds occasionally, but when seated he would not have any restrictions in lifting. He can sit for about 2 hours with minor change of positions for a total of 6 hours in a workday with normal breaks. He can walk and stand for 30-60 minutes at a time for a total of 2-3 hours. He can never climb ropes, ladders, or scaffolds, but can occasionally climb a flight of stairs. He should avoid concentrated vibrations and operating dangerous equipment. He can occasionally stoop and crouch, but can never kneel or crawl.

(Tr. 40.) After consulting a vocational expert, the ALJ ruled that Bailey was not disabled and could return to work as a charge account clerk, an info clerk, or a surveillance system monitor. (Tr. 43-44.)

Bailey raises four claims for relief,[1] but they can be distilled down to two major issues: (1) whether the ALJ improperly rejected the opinions of Bailey's treating physician and physical therapist, and (2) whether the ALJ erred in failing to find that Bailey's frequent surgeries precluded employment or at least entitled him to a closed period of benefits.

## A. Treating Sources

Dr. Holtzclaw gave two assessments. The first was dated December 29, 2010, three months after the September 2010 revision of

---

[1] Bailey's four claims:

(1) "Based upon the restrictions and limitations assessed by the treating orthopedic surgeon and treating physical therapist, as well as the sheer volume of medical treatment," he should have been found disabled.

(2) The ALJ erred in rejecting treating source opinions.

(3) The ALJ erred by failing to analyze the impact of frequent absenteeism necessitated by his ongoing treatment.

(4) Even if he had recovered sufficiently to perform a reduced range of light work by the end of the record, he was entitled to a closed period of disability.

(Doc. 16 at 8.) The first claim is so closely intertwined with the second and fourth claims that the Court has consolidated them. As for the third claim, Bailey has not shown any ongoing need for frequent absenteeism, only that he was required to be absent for long periods of time during the twenty-four month period encompassing the multiple hip revisions and replacements. (*Id.* at 11-12, 17.) As any ongoing need for absences is completely unsupported by the record, the Court has consolidated it with his fourth claim -- that he should be awarded a closed period of disability.

the right hip replacement. (Tr. 866-67.) According to the doctor, Bailey would only be able to work for four hours each day because of sitting and standing limitations. (Tr. 866.) Holtzclaw's second assessment, dated August 9, 2011, stated that Bailey retained the same capacities laid out in the December 2010 assessment. (Tr. 976.) Bailey's physical therapist gave essentially the same limitations on August 24, 2011. (Tr. 980-82.) The therapist noted, however, that Bailey "may be able to [return to full-time work] within 12 months." (Tr. 980.)

The ALJ assigned little weight to Holtzclaw's second assessment and the physical therapist's statement. (Tr. 41-42.) Notably, however, he did not offer any reason to discount Holtzclaw's December 2010 assessment, which was powerful evidence supporting the award of a closed period of disability.[2] Perhaps the ALJ simply overlooked it. In any event, he remained fixated entirely on Bailey's capacity to work on November 30, 2011, the date of his decision denying benefits. (Tr. 44.)

Bailey disputes the ALJ's determination that he was no longer disabled as of November 30, 2011. (Doc. 16 at 8-17.) He contends that

---

[2] "Where the Secretary has ignored or failed properly to refute a treating physician's testimony, we hold as a matter of law that he has accepted it as true." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).

the ALJ violated the treating physician rule and that he is thus disabled as a matter of law. (*Id.* at 8, 12.)

An ALJ must accord substantial weight to the opinion, diagnosis, and medical evidence of a treating physician unless there is good cause to do otherwise. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997); *Edwards v. Sullivan*, 937 F.2d at 583; 20 C.F.R. § 404.1527(d); *Farkas v. Astrue*, 2012 WL 750547 at * 6 (M.D. Fla. Mar. 8, 2012).

> "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). Therefore, if a treating physician's opinion on the nature and severity of a claimant's impairments is well supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).

*Farkas*, 2012 WL 750547 at * 6.

The opinions of examining physicians fall below a well-supported treating source opinion. *McNamee v. Soc. Sec. Admin.*, 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2) & (5)). And non-examining physicians are due the least weight, though the regulations still require that the ALJ consider their opinions and

determine that weight based upon their consistency with the evidence of record. 20 C.F.R. § 404.1527(f).

Unlike treating, examining, and non-examining physicians, a physical therapist is not an "acceptable medical source." Nevertheless, their opinions should be considered as "other source" evidence that shows the severity of an impairment and how it affects a claimant's ability to work. 20 C.F.R. §§ 404.1513(a), (d)(1), 416.913(a), (d)(1); *Freeman v. Barnhart*, 220 F. App'x 957, 961 (11th Cir. 2007) (a physical therapist's opinion is entitled to less weight than that of a physician).

Here, the ALJ began his analysis by recounting Bailey's most recent medical progress reports:

> Progress notes from physical therapy dated June 6, 2011 indicate short-term goals were met and the overall goals were partially obtained. The pain scale reported was 1-3. The therapist felt the claimant would benefit from twice a week sessions for another 4 weeks (Exhibit 44F).

> Treatment notes from Dr. Holtzclaw dated June 22, 2011 indicate the claimant was doing well and had no complaints. No wound problems were noted. Good range of motion without guarding was noted in the bilateral hips. The claimant was encouraged to continue working on abductor strengthening exercises (Exhibit 45F/2). On May 11, 2011, the notes reflect the claimant is doing well and had no further episodes of instability. Dr. Holtzclaw assessed the hip revisions as stable (Exhibit 45F/3).

(Tr. 41.) He also noted Bailey's hearing admission that he "collected unemployment benefits and testified that he was able to work part time, and can do a little housework and walk to the grocery store."[3] (Tr. 42.)

Given that Bailey had made substantial progress since the last surgery, the ALJ assigned little weight to Dr. Holtzclaw's second statement:

> The August 2011 statement from Dr. Holtzclaw states the limitations remain identical to those delineated in his December 2010 statement. This is totally inconsistent since even the physical therapist allows that the claimant has shown improvement. Dr. Holtzclaw's own treatment notes indicate that in June 2011 the claimant was doing well and had no complaints and that he had good range of motion bilaterally. In May 2011, he noted there were no farther episodes of instability. These objective findings are inconsistent with the opinion that the claimant's capabilities have not changed between December 2010 and August 201[1], and

---

[3] He also briefly discussed the findings of non-examining state disability physicians:

> The residual functional capacity conclusions reached by the physicians employed by the State Disability Determination Services also supported a finding of 'not disabled.' Although those physicians were non-examining, and therefore their opinions do not as a general matter deserve as much weight as those of examining or treating physicians, those opinions do deserve some weight, particularly in a case like this where their conclusions accurately reflect the medical records and are fully consistent with the evidence.

(Tr. 42-43.) Both opinions are somewhat troublesome however. The first was unsigned and undated. (Tr. 379-84.) The second mistakenly states that Bailey had a *knee* replacement. (Tr. 440-446.) And both stated that the RFC determinations were applicable twelve months after certain triggering dates. The first RFC was to take effect within twelve months of Bailey's June 9, 2009 left hip replacement. (Tr. 371.) The second was to take effect twelve months from January 10, 2010. (Tr. 383.)

therefore the medical source statement from Dr. Holtzclaw must be discounted.

(Tr. 41.) While he assigned some weight to the physical therapist's statement, he ultimately discounted it because "it was inconsistent with the objective findings and appears to be based on the claimant's subjective allegations" which the ALJ had already discounted. (Tr. 42.)

The ALJ gave greater weight to Dr. Steinert's September 10, 2011 consultative examination:

A physical consultative examination was performed by Dr. Harriett Steinert in September 2011 (Exhibit 48F). Dr. Steinert noted the claimant was able to get on and off the exam table without difficulty. There was full range of motion in the cervical spine. She went on to find:

*There is full range of motion of all joints in all four extremities except for his hips. He can only internally and externally rotate his right hip 20 degrees and externally rotate the left one 10 degrees, and all movement of his hips cause pain. There is moderate tenderness to palpation of both hips. There are no sensory or motor deficits in any extremity. There is no muscle atrophy. Grip strength is normal and equal bilaterally (515). There are normal and equal fine motor and gross motor skills in both hands. Deep tendon reflexes are equal and normal in all extremities. Peripheral pulses are normal and equal in all extremities. There is no pedal edema in either lower extremity. The patient can flex at the waist to 30 degrees. There is no tenderness to palpation of the spine or paraspinous muscles. Straight leg raises are negative bilaterally. The patient is able to walk across the room without an assist device with a normal gait. . . .*

*Labs and X-rays ordered by SS: (A copy of the report is attached.) An x-ray of his right hip showed a right hip prosthesis no changes from the past. An x-ray of his left hip shows a left hip prosthesis with no abnormalities and good alignment.*

*Limitations of AOL's and Work Activity: He has pain in his hips all the time.*

*Diagnosis: S/P multiple operations for bilateral avascular necrosis of the hips with postoperative infections and dislocations.*

(Tr. 42 (emphasis in original); Tr. 985-90 (Dr. Steinert's consultative examination findings).) "Based on the in-person nature of the examination and the consistency with the rest of the objective findings," the ALJ gave Dr. Steinert's "significant evidentiary weight." (*Id.*)

The ALJ offered clear and well-supported reasons to discount the treating source statements. The Court cannot find fault with his determination that Bailey no longer suffered from a disability on November 30, 2011. As he explained at length, Bailey suffered no major setbacks after the May 1, 2011 dislocation procedure. Furthermore, he had already returned to a seasonal, part time job with Chatham County as a score keeper and park administrator.[4] (Tr. 97.)

---

[4] He reported that he tries to go to church and attend Bible studies. (Tr. 106.) As the ALJ noted, he admitted he helps with cooking, laundry, cleaning, and shopping. (Tr. 106-107.) And he managed to drive himself to his hearing. (Tr. 97.)

Dr. Holtzclaw's second evaluation was simply not supported by the medical evidence developed through November 2011. And the physical therapist's August 2011 opinion, which was already due little weight, fails for the same reasons. The Court concludes that the ALJ applied the proper legal standard and had good cause to discount both of those treating source statements as patient advocacy rather than sound medical determinations. Substantial evidence of record thus supports the ALJ's denial of ongoing disability benefits.

## B. Closed Period of Disability

The question remains whether the ALJ erred by failing to consider an award for a closed period of disability running from Bailey's left hip necrosis diagnosis in May 2009 through his recovery after the last procedure in May 2011.[5]

---

[5] At one point, Bailey asserts that the ALJ would have granted a closed period of disability had he declined to go forward with the hearing. (Doc. 16 at 2; doc. 18 at 7 ("the ALJ himself offered to approve the claim so long as Mr. Bailey agreed to accept a closed period").) The only support for this is a notation in the record that the ALJ would allow "on the record review," releasing Bailey and his attorney from attending the hearing, if they agreed to a closed period of disability ending around June 1, 2011. (Tr. 33.) In a self-contradictory, back-pedaling assertion later in his reply brief, however, he admits that "the ALJ was [not] bound to grant a closed period." (Doc. 18 at 8.)

The ALJ conclusorily states, at the end of his decision, that "claimant has not been under a disability . . . from January 9, 2009, through the date of this decision." (Tr. 44.) While his decision regarding ongoing benefits is well supported, he never explained why Bailey should not be awarded a closed period of disability during the two years he underwent multiple replacement and revision surgeries. Throughout that period of time, Bailey was rarely medically stable. He underwent five hip replacements and revisions (June 9, 2009 (left); September 15, 2009 (right); January 7, 2010 (right); September 2, 2010 (right); March 24, 2011 (left)), a seroma reduction (December 7, 2009), two surgical procedures related to a persistent MRSA infection (February 2, 2010 and June 22, 2010), and a dislocation repair (May 1, 2011). He was also frequently forced to maintain a catheter to administer IV antibiotics during his time fighting MRSA. Admittedly, things seemed to improve at times, but those breaks rarely lasted for more than a few weeks.

The Commissioner argues that Bailey was never disabled for a continuous period of twelve months as required by the regulations, since the medical evidence shows that he "recovered quickly in each case, generally within one to three months." (Doc. 17 at 15.) *See* 42 U.S.C. §

423(d)(1)(A), 20 C.F.R. §§ 404.1509, 416.909. But the ALJ never explicitly held as much.[6] Again, there were some interludes where Bailey appeared to be recovering well, but it is unclear whether he was ever capable of engaging in full time work during those intervals. The medical evidence of record suggests that he was not.

Dr. Holtzclaw's first assessment is well supported by the medical record up to that date, and the ALJ never clearly articulated a reason for discounting it. (Tr. 866-67 (assessment); Tr. 41 (ALJ's decision).) *See also supra* n. 2. And both of the non-examining state consultants noted that their RFC assessments would apply twelve months after specific triggering events. (Tr. 371 (first assessment noting that Bailey "should be capable of the above RFC within 12 months of SURGERY (6-09-09 = 6-09-10)"); Tr. 383 (second assessment, made on January 10, 2010, stating that Bailey "should be capable of the above RFC within 12 months").) During the period in question, Dr. Holtzclaw and the state

---

[6] Not only is the Commissioner's *post hoc* analysis questionable, it invites the Court to commit a fundamental legal error. *E.g.*, *Watkins v. Comm'r of Soc. Sec'y*, 457 F. App'x 868, 872 (11th Cir. 2012) ("We cannot affirm based on a *post hoc* rationale that might have supported the ALJ's conclusion." (quotations and citations omitted)); *Cook v. Astrue*, 2009 WL 464190 at *5 (S.D. Ga. Feb. 24, 2009); CAROLYN A. KUBITSCHEK & JON C. DUBIN, SOCIAL SECURITY DISABILITY LAW AND PROCEDURE IN FEDERAL COURT § 8:2 (2013 ed.) (collecting cases holding that a court may neither reweigh the evidence in the record nor substitute its judgment for the ALJ's).

examiners *agreed* that claimant was substantially limited by the hip replacements and revisions. The Court is left to guess as to why the ALJ believed that Bailey was capable of working during that period (assuming he even made such a determination).

This case therefore should be remanded to the Commissioner so that she can determine whether Bailey was capable of returning to work at any point during the two year period described above.[7] *See Gholston v. Astrue*, 2012 WL 1463553 at *15-16 (N.D. Ill. Apr. 27, 2012) (remanding to the commissioner for a determination of whether plaintiff was entitled to a closed period of disability during the period from her initial cancer diagnosis through her recovery after repeated surgery and other treatments); *Varner v. Astrue*, 2011 WL 1196422 at *11-12 (M.D. Fla. Mar. 29, 2011) (remanding for a determination of whether a closed period award was warranted); *Herrington v. Astrue*, 2010 WL 1223909 (M.D. Fla. Mar. 24, 2010) ("[u]nder the facts presented, the Court finds

---

[7] The SSA's Program Operations Manual System ("POMS") provides as follows:

When evidence establishes that the claimant was unable to engage in SGA [substantial gainful activity] for a continuous period of 12 months, but by the time the determination is made, the claimant is no longer disabled, a closed period may be indicated, if all other requirements are met.

§ DI 25510.001 (Jan. 30, 1997).

the ALJ should have, at a minimum, explained his reason(s) for not considering Plaintiff for a closed period of disability").

## IV. CONCLUSION

The Court should **AFFIRM IN PART** and **REVERSE IN PART** the Commissioner's decision. This case should be **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) so that she may determine whether Bailey was due an award for a closed period of disability. *See Shalala v. Schaefer*, 509 U.S. 292, 296-97 (1993). The Clerk should enter a separate judgment pursuant to Federal Rule of Civil Procedure 58.

**SO REPORTED AND RECOMMENDED** this ___20th___ day of October, 2014.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA